# Ferrell *v.* Reed.

*Appeals—Charge of court—Immaterial error.*

The appellate court will not reverse for error in the charge of the court where it is manifest that appellant was not injured by such error.

*Contract—Lost letter—Parol evidence—Question for jury.*

Where a contract was made by letter and acceptance thereof, and the letter being lost the parties respectively attempted to establish its contents by parol and their testimony differed as to the proposition contained therein, there was no error in instructing the jury " it will be for you to determine from the evidence you have how the matter stands."

*Harmless error—Interpretation of contract.*

Where the foundation of the action was an express contract about which the evidence was contradictory as to the theory of the payment of commissions earned, there is nothing to authorize a mutual account based upon a quantum meruit, and it was error to instruct the jury that they might state such an account, but when the verdict discloses that the jury adopted the defendant's theory the court will not be reversed for an obviously harmless error.

Argued April 27, 1900. Appeal, No. 139, April T., 1900, by defendant, in a suit of G. W. Ferrell against B. D. Reed, from judgment of C. P. No. 2, Allegheny Co., April T., 1895, No. 1099, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Assumpsit. Before SHAFER, J.

It appears from the record that this was a suit to recover com-

missions for the sale of certain agricultural machines and the case was whether the $152 which was the agreed amount of commission, was payable immediately upon the consummation of the sale, or whether it was not payable until the purchasers had fully paid for the machines.

The court charged the jury in part as follows:

[This is one of those unfortunate cases where the parties differ very materially in their statements of fact, and yet both of them appear to be honest, and where it would almost seem that there must have been some mistake between them during the whole time. Of course I do not say that there was, but it is possible, and it will be for you to determine from the evidence you have had how the matter stands.] [1] . . . .

[Take all those things together, gentlemen, and if you come to the conclusion that the weight of the evidence is in favor of the plaintiff's theory, that he was to get the $152 when he sold the machine, or it was at least owing to him then, and it did not make any difference when the Livengoods paid or not, then he is entitled to a verdict for $101.34, with interest from February 1, 1893; but if that was not the bargain then he is not entitled to a verdict for that amount, or perhaps any amount, for I don't know that there is any way of making a mutual account between the parties, although you might do so if you thought fair; the amount of the verdict is for you. It could not be over $101.34 with interest.] [2]

Verdict and judgment for plaintiff for $76.01. Defendant appealed.

*Errors assigned* were (1, 2) to portions of the judge's charge, reciting same.

*H. L. Castle*, with him *J. M. Nevin*, for appellant.—Our contention is that the instruction given by the court gave the jury a license to find a verdict not warranted by the evidence, which the jury proceeded to do.

In the case at bar the amount was not disputed, but the issue was, is it due and payable?

The charge of the court laid the defendant liable not only for a verdict for $101.34, but for any amount between: Youngman v. Miller, 98 Pa. 196.

*Simon R. Huss,* with him *J. M. Patterson,* for appellee.

OPINION BY W. D. PORTER, J., May 24, 1900:

This is an action to recover a balance alleged to be due and payable as commissions upon the sale of a threshing machine and engine. The contract between the parties was embodied in a letter written by the plaintiff to the defendant, embodying a proposition which was accepted by the defendant and acted upon by the parties. The letter was lost and the parties, respectively, attempted to establish its contents by parol evidence. The testimony of the plaintiff and that of the defendant differed as to the proposition, contained in the letter, when the commissions were to become due and payable. The court, in that part of its charge which is the subject of the first assignment of error, called attention to this material difference in their statements of fact, suggested that both of the parties appeared to be honest, and that it would almost seem that there must have been some mistake between them during the whole time, and said: "Of course, I don't say that there was, but it is possible, and it will be for you to determine from the evidence you have had how the matter stands." In this there was no error, and the first specification is dismissed.

A portion of that part of the charge embraced in the second assignment of error, viz: "Take all those things together, gentlemen, and if you come to the conclusion that the weight of the evidence is in favor of the plaintiff's theory, that he was to get the $152 when he sold the machine, or it was, at least, owing to him then, and it didn't make any difference whether the Livengoods, the purchasers, paid or not, then he is entitled to a verdict for $101.34, with interest from February 1, 1893," is absolutely correct. The court, however, added: "But if that was not the bargain, then he is not entitled to a verdict for that amount, or, perhaps, any amount, for I don't know that there is any way of making a mutual account between the parties, although you might do so if you thought fair; the amount of the verdict is for you. It could not be over $101.34, with interest." This was giving the jury a latitude which the evidence did not warrant. There was no evidence in the case which could have authorized a recovery upon a quantum meruit. There was no question of a mutual account involved, the foun-

dation of the action was an express contract.   There was no dispute as to the total amount of the commissions earned.   The only question of fact upon which the jury was to pass, under the evidence in this case, was what was the proposition, contained in the lost letter, which fixed the time when the commissions were to become due and payable.   It was not for the jury, in the absence of evidence, to state a mutual account between the parties.   But, while this part of the charge was erroneous, a careful review of the testimony taken in connection with the verdict has convinced us that the error worked no injury to the interests of the defendant.   The plaintiff testified, in substance, that the proposition contained in the letter which became the contract between the parties, was that he was to be paid a commission of twenty per cent on time sales, and twenty and ten on cash sales, and explained that this meant he was to be paid twenty per cent of the manufacturer's list on time sales, and in case the sale was made for cash that ten per cent additional was to be computed upon the amount of the sale after deducting the twenty per cent; and that this was a time sale. If the jury believed this, the plaintiff was entitled to his commissions as soon as the sale was effected.   It is undisputed that the parties met on February 1, 1893, some time after the sale had been consummated, and it was then agreed between them that the total amount of the commission was $152; that the Livengoods had at that time paid one third of the purchase money, and that the defendant then paid to the plaintiff the sum of $50.66, being one third of the commissions, leaving a balance of $101.34.   As to this balance, the plaintiff testified that the defendant at that time said " he would rather not pay it all at the present time, that he would rather string it out a little, and I agreed to that."   The defendant testified as to the contents of the lost letter as follows, viz : " In answer to the letter of Mr. Ferrell I quoted him twenty per cent on time, and twenty and ten on cash, based on our commission contract. Q. Did you state in your letter that it was to be based on your commission contract?   A. All my conversation, and in my letter to him, indicated that his commission would be paid in accordance with the commission contract which was made by all agents."   At this point of his testimony he did not state what the commission contract was, nor its terms, and that com-

mission contract is not printed in appellant's paper-book. On cross-examination, however, the defendant did testify specifically, with regard to the word used in the lost letter: "Now, I made him a quotation of twenty off on time and twenty and ten for cash sales, the sales to be made in accordance with our contract, and commissions to be paid as the notes were paid." With regard to the settlement in February, 1893, the defendant testified: "Q. Then, between that time and February were two of the notes paid? A. Yes, sir, between that time and February; nearly one third of the notes were paid between that time and the first of January, I believe. Q. Then, in February you settled with him and paid him one third of the commissions? A. Yes, sir. Q. Tell us why it was that you paid him at that time just one third of the commission? A. I paid him one third of the commissions simply because it was in accordance with the agreement I had made with him. Q. When was the other two thirds of those commissions to be paid? A. To be due when those notes were paid, in two seasons." If the jury believed this testimony of the defendant, the commissions were only to be paid upon the amounts, and at the times, of payments by the purchasers to the defendant. If his testimony as to the settlement made in February, 1893, is true, the parties put a construction upon their own contract and acted upon the same; and, according to the terms of that construction, the defendant could only be called upon to pay commissions upon the part of the purchase money which he received. Two thirds of the purchase money remained unpaid at that time, and the purchasers subsequently made an assignment. The defendant testified that he made a compromise, of his claim for the purchase money, with the assignee of the purchasers, and that, as a consequence of that compromise, he lost $180 of the claim, but he does not state what was the basis of his settlement with the assignee, or whether he includes in the $180 his own time in making the settlement, his counsel fees and other expenses. The defendant offered testimony, which was not objected to, that the basis of the settlement between the defendant and the purchasers was seventy-five per cent of the claim, and the defendant, when he subsequently took the stand in rebuttal, did not deny this. The only direct evidence, therefore, which the jury had as to the amount of the purchase

money which was paid was that the defendant had settled and been paid upon the basis of seventy-five per cent of the amount of the purchase money which had remained unpaid on the 1st day of February, 1893, at the time of the settlement between the plaintiff and defendant. It is, therefore, manifest that the jury accepted the testimony of the defendant as true, and found that he was only required to pay the commissions on the deferred purchase money as he received payments upon the same. The defendant had received seventy-five per cent of that deferred purchase money and the jury returned a verdict for seventy-five per cent of the unpaid commissions. This makes it clear that, although there was error in the charge of the court, the defendant suffered no injury as a consequence. Had the verdict been in favor of the defendant the plaintiff would, undoubtedly, have had just grounds to complain of the charge.

Judgment affirmed.